IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| In Re: | § | |
| FORT WORTH OSTEOPATHIC | § | |
| HOSPITAL, INC., ET AL | § | |
| Debtors | § | |
| | § | |
| SHAWN K. BROWN | § | |
| Plaintiff | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 4:07-CV-206-Y |
| | § | (Consolidated with |
| CANTEY & HANGER, L.L.P. | § | 4:07-CV-457-Y; |
| and MORTON L. HERMAN, et al. | § | 4:07-CV-553-Y; |
| Defendants and | § | 4:07-CV-624-Y) |
| Third-Party Plaintiffs | § | |
| | § | |
| AND | § | |
| | § | |
| MBIA INSURANCE CORPORATION | § | |
| Third-Party Defendant | § | |

ORDER ADOPTING REPORT AND RECOMMENDATION OF
BANKRUPTCY JUDGE AND DENYING MOTION TO DISMISS

This adversary proceeding arises out of the Chapter 7
bankruptcy of the Fort Worth Osteopathic Hospital ("the Hospital").
The Chapter 7 trustee, Shawn K. Brown, filed an adversary complaint
in the bankruptcy court against numerous defendants, including
defendants Cantey & Hanger, L.L.P., and Morton L. Herman (collec-
tively "Cantey Hanger") seeking to recover damages for their
alleged causation of the "catastrophic failure of the Hospital."
For its part in this catastrophic failure, Brown alleges that
Cantey Hanger assisted or encouraged breaches of fiduciary duty by
the Hospital's officers and directors, engaged in professional
negligence, engaged in a civil conspiracy, and received an unjust
enrichment.

In November 2007, the Court granted the motion of Cantey Hanger and the other defendants to withdraw the reference of the trustee's suit against them. In the order of withdrawal, the Court directed that the suit remain with the bankruptcy judge for all pretrial matters and that when the suit were ready for trial, upon the certification of the bankruptcy judge, the reference of the suit would be withdrawn for trial in this Court.

Cantey Hanger commenced a third-party action against MBIA Insurance Corporation ("MBIA") asserting a right of contribution under Federal Rule of Bankruptcy Procedure 7014, Federal Rule of Civil Procedure 14, and Texas Civil Practice and Remedies Code § 33.016. Cantey Hanger contends that MBIA assisted/encouraged breaches of fiduciary duty, to the extent any occurred and, thus, contributed to, or is responsible for, the insolvency of the Hospital.

MBIA filed a motion to dismiss the third-party complaint in the bankruptcy court for lack of subject-matter jurisdiction. The bankruptcy judge heard the matter and because MBIA's motion requires a ruling on this Court's subject-matter jurisdiction, the bankruptcy judge decided it was appropriate to provide a report and recommendation to this Court as to the disposition of MBIA's motion.

Following receipt of the report and recommendation, the Court issued an order permitting the parties to file any objections to

it. MBIA filed objections, Cantey Hanger filed a response and MBIA filed a reply. After careful review of MBIA's motion, the response, and the reply; the bankruptcy judge's report and recommendation; and MBIA's objection, the response, and the reply, the Court ADOPTS the recommendations of the bankruptcy judge as follows:

The Court agrees and concludes that the bankruptcy judge is correct that Cantey Hanger's third-party complaint against MBIA is currently before the bankruptcy court and not this Court. The Court's November 2, 2007, order granting the motion of Cantey Hanger and the other defendants to withdraw the trustee's suit stated that the adversary proceeding "shall remain with the bankruptcy court for all pretrial matters and until the bankruptcy court has certified that the parties are ready for trial." The order went on to state that only after the bankruptcy judge has certified to this Court that the matter is ready for trial will the adversary proceeding be withdrawn. Therefore, the bankruptcy judge is correct that Cantey Hanger's third-party action against MBIA is currently before the bankruptcy court.

The Court also agrees that the bankruptcy court enjoys jurisdiction over the third-party claim notwithstanding the holding of the United States Court of Appeals for the Fifth Circuit in *Walker v. Cadle Co. (in re Walker),* 51 F.3d 562, 568-69 (5th Cir. 1995). Title 28 U.S.C. § 1334(b) provides, in relevant part:

> [N]otwithstanding any Act of Congress that
> confers exclusive jurisdiction on a court or
> courts other than the district courts, the
> district courts shall have original but not
> exclusive jurisdiction of all civil proceed-
> ings arising under Title 11, or arising in or
> related to cases under Title 11.

Section 1334(b) lists three categories of bankruptcy matters over which the district courts have original jurisdiction: (1) all civil proceedings arising under title 11; (2) all civil proceedings arising in a case under title 11; and, (3) all civil proceedings related to a case under title 11.  Because the three categories in section 1334(b) "operate conjunctively to define the scope of jurisdiction," the Court need "only to determine whether a matter is at least related to the bankruptcy."  *Randall & Blake, Inc. v. Evans,* 196 F.3d 579, 584 (5th Cir. 1999)(internal quotations omitted).

"A proceeding is related to a bankruptcy if the outcome of that proceeding **could conceivably** have any effect on the estate being administered in bankruptcy."  *Bass v. Denney,* 171 F.3d 1016, 1022 (5th Cir. 1999)(emphasis added).  Specifically, an action is related to a bankruptcy if the outcome of the action could alter, positively or negatively, the debtor's rights, liabilities, options, or freedom of action and if, in any way, the action can have an impact on the handling and administration of the bankruptcy estate.  *Id.*  "This test is obviously conjunctive: For jurisdiction to attach, the anticipated outcome of the action must both (1)

4

alter the rights, obligations, and choices of action of the debtor, and (2) have an effect on the administration of the estate." *Id.*

In *Walker,* at the time the third-party complaint for contribution was filed, it was clear that it would have no conceivable affect on the bankruptcy estate being administered in the bankruptcy. *Id.* By contrast, the bankruptcy judge here has specifically found "Cantey Hanger's third-party action is 'related to' the [Hospital's] bankruptcy because the outcome could [conceivably] alter the debtor's options or freedom of action and impact the handling, administration, and realizable value of the bankruptcy estate." The bankruptcy judge's pause is based on the view that while at this early juncture it certainly is conceivable that the third-party action could affect the administration in bankruptcy of the Hospital's estate, "there are presently insufficient facts before the [bankruptcy court] as to whether the third-party claim" may ultimately affect the bankruptcy estate. In other words, while it is currently conceivable that the third-party action may affect the bankruptcy estate, it may turn out not to have any affect, and there are insufficient facts at this time to know for sure. Thus, the bankruptcy judge is of the view that it "may properly hear Cantey Hanger's third-party contribution claim . . . until it becomes possible to make a fact-finding that the claim will" have no affect on the administration of the bankruptcy estate. Here, the Court does not agree.

"Federal subject-matter jurisdiction is tested when the jurisdiction of the federal court is invoked." *Randall & Blake, Inc. v. Evans (In re Canion),* 196 F.3d 579, 586 n.29 (5th Cir. 1999). "It has long been the case that the jurisdiction of the Court depends upon the state of things at the time of the action brought . . . . It measures all challenges to subject-matter jurisdiction . . . against the state of facts that existed at the time of filing—whether the challenge be brought shortly after filing, after the trial or even for the first time on appeal." *Grupo Dataflux v. Atlas Global Group, L.P.,* 541 U.S. 567, 570-71 (2004)(internal quotations and citations omitted).

At the time Cantey Hanger filed its third-party action against MBIA, the bankruptcy judge, who has a command of the Hospital's bankruptcy and who is intimately familiar with it, found that it could conceivably affect the administration of the bankruptcy estate. While the bankruptcy judge found that he had insufficient facts to conclusively determine whether the third-party action would have an affect on the bankruptcy estate, that would not serve to defeat's the Court's jurisdiction. The relevant question is not whether, at the time Cantey Hanger filed its third-party action against MBIA, the bankruptcy court can state conclusively that it will have an affect on the administration of the bankruptcy estate, but whether it could conceivably have such an affect. If the answer to the correctly stated question is yes, then jurisdiction

6

attaches and jurisdiction cannot later be divested simply because after the case has been fully litigated it turns out that the third-party action did not affect the bankruptcy estate. *See De Aguilar v. Boeing Co.,* 11 F.3d 55, 58, n.3 (5th Cir. 1993)(stating that a plaintiff could not defeat diversity jurisdiction after removal by using stipulations or affidavits to reduce the amount below the requisite level); *Reisman v. New Hampshire Fire Ins. Co.,* 312 F.2d 17, 19 (5th Cir. 1963)("The decisions . . . make it clear that once jurisdiction has attached, it cannot be subsequently divested.").

Therefore, the Court concludes that the bankruptcy court enjoys "related to" jurisdiction because the bankruptcy judge found that the third-party action could conceivably affect the adminis-tration of the Hospital's bankruptcy estate. *Walker* is inapposite to this case because there, at the time the third-party-contribu-tion claim was filed, it was clear that it could not have any conceivable affect on the bankruptcy estate. And even if later it is shown that the third-party action in this case will not have any affect on the bankruptcy estate, the bankruptcy court will not be divested of jurisdiction.

Nevertheless, the Court shares the bankruptcy judge's "concerns about the potential for wasted time and litigation expense should the bankruptcy court's 'related to' jurisdiction be questioned on appeal." In that regard, the Court agrees with the

bankruptcy court that this Court enjoys subject-matter jurisdiction over the third-party action under 28 U.S.C. § 1367(a). Section 1367(a) "provides for supplemental jurisdiction . . . over claims forming part of the same case or controversy with any civil action over which the district courts have original jurisdiction. **This includes bankruptcy jurisdiction**." *Edge Petroleum Operating Co. v. GPR Holdings, L.L.C. (In re TXNB Internal Case),* 483 F.3d 292, 300 (5th Cir. 2007)(emphasis added).

This Court and the bankruptcy court enjoy subject-matter jurisdiction over the Hospital's Chapter 7 bankruptcy under 28 U.S.C. § 1334(a) and (b). This is because the Hospital's Chapter 7 bankruptcy is an action arising under Title 11 of the U.S. Code. *See Wood v. Wood,* 825 F.2d 90, 92 (5th Cir. 1987)(the phrase, proceedings arising under Title 11, "refers merely to the bank-ruptcy petition itself, over which district courts (and their bankruptcy units) have original and exclusive jurisdiction"). Also, this Court and the bankruptcy court enjoy subject-matter jurisdiction over the trustee's suit under section 1334(b) because it is a proceeding related to the Hospital's bankruptcy. Neither party can dispute that the trustee's suit could conceivably affect the Hospital's bankruptcy estate. However, this Court, and not the bankruptcy court, enjoys supplemental jurisdiction over the third-party action under section 1367(a). *See Edge Petroleum,* 483 F.3d

at 300 ("Bankruptcy courts may not exercise supplemental jurisdiction.").

Nonetheless, the Court agrees with the bankruptcy court that the third-party action shares a substantial common nucleus of operative fact with Brown's adversarial complaint. This is buttressed by the bankruptcy judge's preliminary finding that at this time, it is conceivable that the third-party action could have an affect on the administration of the bankruptcy estate. And the Court agrees that it should not use its discretion to decline to exercise supplemental jurisdiction. The state-law claims in the third-party action do not predominate over the bank-ruptcy—especially since the third-party action may affect the bankruptcy estate. Were the Court to decline exercising supplemen-tal jurisdiction and Cantey Hanger were forced to litigate its third-party action in state court, Cantey Hanger could find itself in conflict with the automatic stay should it turn out that its third-party action affects the administration of the bankruptcy estate—and especially if it negatively affects the estate. Moreover, there undoubtedly will be extensive overlap between the third-party action and the trustee's suit.

This brings the Court, finally, to the bankruptcy judge's recommendation that the Court refer the third-party action to the bankruptcy court to coordinate discovery and to address all non-dispositive and pretrial matters. According to the bankruptcy judge, "There will be a need to coordinate pretrial efforts in this

third-party action with the larger adversary proceeding . . . to avoid duplicative discovery, unnecessary expense, and delay." No doubt, to require this Court to separately coordinate discovery and rule on pretrial, non-dispositive matters would be an inefficient use of judicial resources and could lead to inconsistent determinations between the two courts. It could also lead to one party's using the other court to circumvent a decision it may dislike.

The bankruptcy code allows district courts to refer to its bankruptcy unit "any or all cases under Title 11 and any or all proceedings arising under Title 11 or arising in or related to a case under Title 11." 28 U.S.C. § 157(a). With this power of referral also accompanies the power to withdraw any reference. Indeed, section 157(d) states that a "district court may withdraw, **in whole or in part**, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown."

In this particular case, because there is a concern as to whether the "related to" jurisdiction under section 1334(b) will be upheld on appeal, with enormous expense and extensive resources at stake, and because the bankruptcy court cannot exercise supplemental jurisdiction, the Court accepts the bankruptcy judge's recommendation to *sua sponte* withdraw the reference of the third-party action. That action will reside with this Court. But since section 157(d) permits the Court to withdraw the reference in whole

10

or in part, and because the Court concludes that the third-party action is related to the Hospital's bankruptcy under section 1334(b) and section 157(a), the withdrawal of the third-party action shall be as follows: The third-party action shall remain with the bankruptcy court for the limited purpose of coordinating discovery and addressing all pretrial matters, including any dispositive motions. The bankruptcy court, however, is DIRECTED only to issue a report and recommendation to this Court on any motions (excluding purely administrative motions) on any pretrial matters, including any dispositive motions. This Court, upon receiving any report and recommendation from the bankruptcy judge and after the parties have had an opportunity to submit any objections thereto, will rule on such motions and enter the appropriate order. Under this course, this Court will be acting and exercising its supplemental jurisdiction over the third-party action with the guidance of the bankruptcy court charged with overseeing the related bankruptcy and the related adversary action of the Chapter 7 trustee and pursuant to section 157. This will further ensure the avoidance of any duplicative and unnecessary discovery and avoid any inconsistent decisions between the two courts.

Therefore, in light of the above, MBIA's motion (doc. #24) to dismiss is DENIED.[1]

SIGNED June 25, 2008.

_Terry R. Means_____
TERRY R. MEANS
UNITED STATES DISTRICT JUDGE

---

[1] The evidence contained in Cantey Hanger's appendix that accompanied its response, objected to by MBIA, had no impact on this decision except for exhibit eleven (App. at 103), which is the cross-claim against MBIA filed by certain of the Hospital's former officers, directors, and employees. The Court takes judicial notice of the cross-claim filed in the bankruptcy court.